# Beeman *v.* Supreme Lodge, Shield of Honor, Appellant.

*Beneficial associations—Payment of dues—Forfeiture of membership.*

Where the by-laws of a beneficial association provide that "each mem-
ber shall pay the amount according to age, as per table, and any member
failing to pay same on or before the last meeting night of each month shall
stand suspended from the order and all benefits therefrom," payment by
cash mailed on the last day of the month but not received by the associa-
tion until the following day, is not a payment within the meaning of the
by-law, and failure to make the payment within the time prescribed works
a suspension of the member without any action on the part of the associa-
tion.

The words "shall stand suspended," when used in respect to policies of
insurance and death benefit certificates would seem to be equivalent in
their legal effect, to "cease and determine" and "null and void."

Where the by-laws of a beneficial association provide that in case of a
dispute about suspension or expulsion, no suit shall be brought against the
association until "the remedies and means of redress" provided by the
association shall be exhausted, a beneficiary cannot maintain a suit against
the association where it appears that neither the member nor the bene-
ficiary sought in any way to avail himself of the remedies and means of
redress provided by the association.    Such by-laws are binding upon the
association and its members.

Argued Oct. 4, 1905.    Appeal, No. 77, Oct. T., 1905, by
defendant, from judgment of C. P. No. 2, Phila. Co., Sept. T.,
1903, No. 3054, on verdict for plaintiff in case of Diana Bee-

Statement of Facts—Charge of Court below. [29 Pa. Superior Ct.

man v. Supreme Lodge, Shield of Honor.   Before RICE, P. J.,
BEAVER, ORLADY, PORTER, MORRISON and HENDERSON, JJ.
Reversed.

Assumpsit for death benefits.
The opinion of the Superior Court states the case.

The court charged in part as follows :

It appears that in the month of March, 1903, Mr. Beeman
received a notice telling him what moneys were to be made up,
and what his share was of the sum required.   The notice was
a printed form, with blanks for the filling in of the necessary
special matter, and it instructed him that he owed $1.26, and
that payment should be made on or before March 30, to Ed-
ward F. Whaley,`financial secretary.   It appears that on the
morning of March 30, the date named, Mrs. Beeman posted a
letter addressed to the financial secretary, and with respect to
the address she followed, as you will observe, the instructions
given her on the notice, which notice you will have out with
you.   She inclosed more money than enough to answer the
demand.   She inclosed $1.50, when all her husband owed was
$1.26, and it would seem to be conceded that it was proper
that she should do this in behalf of her husband because of the
then condition of his health.   She says expressly that that
letter was posted at 9:30 A. M.   [It turns out that it reached
the financial secretary, but it reached him something less than
eight hours after midnight of March 30 at the latest, if it did
not reach him earlier, because assuming that we put a strict
interpretation upon this notice, she had until midnight to send
in that money and it did reach him by the first delivery in the
morning, so you will observe it was just about eight hours,
perhaps a little more and perhaps a little less, after the limit
of time imposed upon her.] [1]   [The notice does not state to
Mr. Beeman that there will be a meeting held on March 30 in
the evening, and that the money must get to the lodge before
or at the time of the meeting.   It simply says to him, send the
money to Whaley on or before the 30th.   There was, how-
ever, a meeting held, and at that meeting, among others, Mr.
Beeman was reported as delinquent.   That was, and must
have been necessarily under the notice, the first moment when

the point came up, because, as you will remember, he had until
the end of the 30th.   Accordingly, he could not have been de-
linquent until the end of the 30th, and accordingly when they
made that investigation, some little time before the end of the
30th, it must have been the first time when they found he was
delinquent.] [2]   What do they do?   [They immediately call
him brother and suspend him.   That seems to be a severe course
to pursue.   Here was a sick man, who had, it is not denied,
posted his money that morning, whose money, as it turns out,
was lying there waiting for Mr. Whaley, whose money reached
Mr. Whaley within ten hours of the end of the day.] [3]
Here was a sick man not given all of the time of the 30th to
pay up, but cut short in the matter at that meeting.   They ap-
pear, according to the testimony of these gentlemen, to have
put to the meeting the question, Is anybody here present will-
ing to pay up for Mr. Beeman? and the reply was either silence,
which amounted to a negation, or else an active vote of no, of
which there is no record whatever on their minutes.   Then,
according to another form, they put to the meeting the ques-
tion, shall we pay this $1.26 out of the fund in behalf of Mr.
Beeman, and it has been stated that it was not an unusual
thing for the gentleman who had control of the fund to do that
for delinquent members, in order that there might later be
some negotiation or arrangement by which the fund should be
made whole and the gentlemen thus delinquent be continued
in membership, and indeed it has been said that it had been
done in Mr. Beeman's case on other occasions.   The matter
was put to a vote, and it was either negatived like the other
by absolute silence, or else there was a negative vote of which
there is no record whatever in the book.   [Now, if you take
the book as evidence, and if you consider that he was entitled to
have the question put, will any man here pay for him, and later
to have the question put, shall the fund pay for him, then the
book shows you no evidence of their having complied with
those two provisions, and it will be for you to say whether you
credit the witness who testifies that those two matters of prac-
tice were on this occasion duly observed.] [4]

It appears that Mr. Whaley, having gone home that night,
left his house the next morning without waiting for the post,
and when he returned to his house from work on the night of

March 31, 1903, he found the lady's letter with the money inclosed, $1.50, and on April 3 he sent it back to her. He sent her the money, and informed her that her husband had been suspended. When the husband was thus apprised, he deputized his son to call on Mr. Whaley to ascertain about the position of things, and whether or not there should be or could be a reinstatement, and you have heard what was said by both gentlemen, Mr. Beeman's son and Mr. Whaley, the financial secretary of the association. It would seem that whether or not Beeman was informed that he could not be reinstated on account of his bad health, certainly something was said in that connection which produced on the part of Mrs. Beeman some degree of indignation, and which appears to have impressed Beeman perhaps more than it should. Beeman seems to have considered that he could not be reinstated. It is now said to you that he could have been reinstated if he had paid a dollar, but whilst that is substantially correct, and counsel is always correct, yet the rule is somewhat more than that. He could not have been reinstated merely upon payment of a dollar. However that may have been, he was not reinstated, and the last transaction of which we have evidence having taken place early in April, he remained ill and survived up to August 26 of the same year, when he died.

There is a case here of some hardship. This is not an effort to take money from widows and children, worthy members, and so on. It is a case in which it is desired, if it is lawful, to collect money from an association, that has promised to pay it, and the collection will injure nobody. If it is due it will be a proper thing for the association to pay it. The first point of inquiry is as to the effect of the mailing of the letter by Mrs. Beeman on the morning of March 30, 1903. [It had not occurred to me until I examined the notice which has been handed to me just now, the precise exigency indicated by the demand, and I have stated to you what it was, to wit, a necessity to pay moneys for certain people in order to make up a fund to go to their survivors, a statement of the proportion due by Mr. Beeman, and an intimation that he must pay on or before March 30. I fail to find any indication that if he did not so pay, this association could lawfully suspend him. You turn to the by-laws for that. You will have them out with

you, and will read them, I have no doubt, with care, but I instruct you as matter of law that he had until the end of March 30, in which to make his payment.] [6] [Was there a payment made before the end of March 30? The posting of this letter may.perhaps be regarded as a delivery of the money to Mr. Whaley at the moment the letter was put in the letter-box. It then passed from the assured and was put on its way to the financial secretary, and all that happened on March 30. I instruct you that if you find it was so deposited (and you may not find it, the credibility of the witnesses is entirely for you), by Mrs. Beeman on the morning of March 30, at or about 9:30 o'clock, in one of the regular post office boxes of the city, and was thus put in the course of a regular and orderly transmission to the financial secretary within the limits of the city, you may find that it was a delivery of the money to the financial secretary. If I am wrong in this the learned counsel will have the benefit of the attention which the court in banc will give to him and give to anything he may say on the subject. It is a question which is not free from doubt in my mind.

Mr. Byron : Delivery as of what date ?

The Court : The morning of March 30.

Mr. Byron : It will be considered delivery as of what date ?] [7]

The Court : Delivery of that date, of course. More than this, however, if you find that this association suspended this man before the end of March 30, you must find that it did what it had no right to do under the law, and he was not lawfully suspended. If he was not lawfully suspended, any action taken by the association which is shown by the proofs here would not be adequate to deprive him, or his widow, of the right to the money for which he had paid, and accordingly should you resolve these two points, or one only of them, in favor of the plaintiff's contention, you will find a verdict for the plaintiff. [But if, on the other hand, you find that the lady did not make that deposit as she has testified she did, and did not put that letter in the course of transmission, then you will find that she had not practically or legally on behalf of her husband paid the money on March 30, but that will leave you to consider the action of the association itself at that meeting and I confess it appears to me rather difficult to get over

the point that they did then and there, before they had a right to do it, before the day had run out which they had given, suspend him unlawfully.] [8]

Verdict and judgment for plaintiff for $1,088. Defendant appealed.

*Errors assigned*, among others, were (2–8) above instructions, quoting them.

*Robert J. Byron*, for appellant.—The assessment was not paid in time : Shuman v. Fire Ins. Co., 206 Pa. 417 ; McSparran v. Ins. Co., 193 Pa. 184; Black v. Roebuck, 17 Pa. Superior Ct. 324; Bank v. Marshall, 9 Pa. Superior Ct. 621 ; Thomson v. Ins. Co., 4 Pa. Dist. Rep. 382; Lantz v. Ins. Co., 139 Pa. 546 ; Duffy v. Alta Friendly Society, 17 Pa. Superior Ct. 531 ; Hansen v. Supreme Lodge, 40 Ill. App. 216 ; Knights of Honor v. Keener, 25 S. W. Repr. 1084.

In the present case there was no appeal by the member because of his suspension, and there was no appeal by his beneficiary, the plaintiff, from the decision of the supreme lodge in refusing payment of death benefits notwithstanding the foregoing section allowed and required such appeal to be taken.

It is well settled that such by-laws are binding upon the association and its members : Black & White Smiths' Society v. Van dyke, 2 Wharton, 309 ; Toram v. Beneficial Ass'n, 4 Pa. 519 ; Visitation Society v. Comm. ex rel. Meiyer, 52 Pa. 125 ; German Ref. Church v. Comm. ex rel Seibert, 3 Pa. 282 ; Wick v. Fraternities Acc't Order, 21 Pa. Superior Ct. 507.

*Rome J. Moorhead*, with him *Harry A. Ambler, Jr.*, for appellee.—If payment by mail is authorized either expressly, by custom or by the wording of the notice, then mailing the letter containing the money is payment and the time of payment is the moment the letter is deposited properly addressed in the regular course of transmission : Bacon on Benefit Societies & Life Ins., page 724, § 369 ; Primeau v. Nat. Life Ass'n, 28 N. Y. Supp. 794 ; Calvin v. U. S. Mut. Acc. Ass'n, 21 N. Y. Supp. 734; Palmer v. Ins. Co., 84 N. Y. 63.

Beeman had until midnight, March 30, to pay his assessment, and, therefore, his suspension before that time was void :

Och v. Homestead Bank & Life Ins. Co., 4 Pitts. L. J. (N. S.) 98; Thomson v. Life Ins. Co., 4 Pa. Dist Rep. 382; Scheu v. Grand Lodge, 17 Fed. Repr. 214 ; Helme v. Ins. Co., 61 Pa. 107.

OPINION BY MORRISON, J., November 20, 1905 :

Silas A. Beeman was a member of the Supreme Lodge, Shield of Honor, appellant, and after his death his wife, appellee, brought suit on his certificate as a beneficiary member of the appellant society, and the case was so tried in the court below that she recovered a verdict and final judgment for the full amount of her claim.    The material facts in the case are practically uncontradicted, and the questions for determination here involve propositions of law and their application to the conceded facts.

It is conceded that the by-laws of the appellant society provide for assessments upon the members and for suspension for nonpayment thereof, and that Silas A. Beeman was properly notified of an assessment to be paid on or before March 30, 1903, and the uncontradicted evidence shows that the assessment did not reach the officer of the appellant, authorized to receive the same, until March 31, 1903.    The uncontradicted evidence further shows that Beeman was suspended at the meeting night of March 30 for nonpayment of said assessment, and this was the last meeting night of that month.

We find in the record ten assignments of error, somewhat lengthy, but the view we take of the case will not require separate discussion of these assignments, and we need not quote them in this opinion.    No question is raised as to the validity of the assessment, nor is it contended that it was in fact paid to the proper officer of the appellant society until March 31.    All of the assignments of error relate to and bear upon two propositions: 1. Was the assessment paid in time ?   2. Was Silas A. Beeman properly and regularly suspended ?

The first assignment of error is :  " The court erred in refusing to direct a verdict for the defendant."    As we understand the law applicable to the facts, this assignment will dispose of the case.

It is conceded that Silas A. Beeman was a member of the appellant society and that he was bound by its constitution, by-laws, rules and regulations ; that on March 2, 1903, he was

duly notified that assessment No. 534 was due and must be paid on or before the last meeting night in March. The amount of the assessment was stated in the notice, and that it was payable to the financial secretary of the order. The notice contained the following : " No second notice will be sent. If not paid when due you will be suspended. Must be paid on or before March 30." As to notice see Shuman v. Fire Ins. Co., 206 Pa. 417.

Article 10, sec. 333, of the by-laws of the order reads : " Each member shall pay the amount according to age, as per table, and any member failing to pay same on or before the last meeting night of each month shall stand suspended from the order and all benefits therefrom, and the financial secretary shall notify the worthy master, who shall immediately announce the suspension to the lodge. The financial secretary shall notify the supreme secretary on the monthly remittance notice, giving the member's name, the date and cause of suspension." It is further conceded that if the assessment was not in law paid before midnight of March 30, and if the member was legally suspended, then the plaintiff could not recover.

The appellee contends that the money to pay the assessment in question was inclosed in a letter, properly addressed and stamped, and deposited in the post office in Philadelphia on March 30, in time to have reached the financial secretary on that day. But the uncontradicted evidence, corroborated by the date stamped on the envelope, shows that the letter did not reach the financial secretary until the next day. The learned counsel for the appellee then argues that : " If payment by mail is authorized either expressly, by custom or by the wording of the notice, then mailing the letter containing the money is payment, and the time of payment is the moment the letter is deposited properly addressed in the regular course of transmission." In support of this proposition he cites a number of authorities which fully support it. Among these authorities are : Bacon on Benefit Societies and Life Insurance, p. 724, sec. 369 ; Primeau v. National Life Assn., 28 N. Y. Supp. 794 ; Calvin v. U. S. Mut. Accident Assn., 21 N. Y. Supp. 734 ; Palmer v. Ins. Co., 84 N. Y. 63. The doctrine of these cases rests on the theory that the money is sent by mail by authority of the

creditor.   In such case deposit in the post office, properly addressed and stamped, is at the risk of the creditor, and payment is deemed to have been made at the time of deposit.   But the difficulty of the case of the appellee is the lack of evidence showing, or tending to show, that Beeman was authorized either directly or by implication, to mail his assessment to the financial secretary.   We fail to find any evidence in the record sufficient to even submit this question to the jury.   As to the presumption arising from mailing the letter on March 30, see McSparran v. Ins. Co., 193 Pa. 184, where it is said : " It is not therefore the sending but the receipt of a letter that will constitute notice, and there is no presumption of law that a letter mailed has been received."   (p. 191.)

The law of the order distinctly required the payment of the assessment on or before March 30, and we are clearly of the opinion that depositing it in the post office on that day was not payment without proof that it actually reached the financial secretary on the same day.   The learned counsel further argues that Beeman had until midnight, March 30, to pay his assessment, and, therefore, his suspension before that time was void.   Let this be conceded and it does not help the appellee. The authorities cited doubtless sustain the proposition that if Beeman had died before midnight of March 30 the lodge would have been liable on his benefit certificate ; this because the certificate would not be void until midnight because of the failure to pay the assessment.   We think the reasoning of Judge WHITE in Jacob Och v. Homestead Bank and Life Ins. Co., 4 Pitts. Legal Journal (N. S.), 98, and Judge ARNOLD in Thomson v. Conn. Mut. Life Ins. Co., 4 Pa. Dist. Reps. 382, and the authorities cited by said judges sustain the appellee's contention that if Beeman had died before midnight of March 30 his benefit certificate would have been in force.   But conceding all of this does not sustain the judgment in this case for the plain reasons that Beeman did not die on March 30, nor for some time thereafter, and his assessment was not paid before midnight of March 30.   The learned court below gave much weight to the fact that Beeman was suspended at the meeting night of March 30 before midnight.   But under the facts in this case, we cannot agree with the theory of the court. If Beeman had died before midnight there would be much force

in the position taken. If we construe the law to the utmost in favor of the appellee, Beeman was suspended by force of the law of the order, ipso facto, at midnight on March 30, because of the nonpayment of his assessment. " Each member shall pay the amount according to age, as per table, and any member failing to pay the same on or before the last meeting night of each month shall stand suspended from the order and all benefits therefrom." We think it a proper construction of this language, under the law of the order, to say that when the meeting adjourned on the evening of March 30, Beeman was suspended and not entitled to benefits as a matter of law, without any action on the part of the lodge. It is the member himself, who, by violating the laws of the order, works his own suspension through the nonpayment of his assessment. The words, " shall stand suspended," when used in respect to policies of insurance and death benefit certificates, would seem to be equivalent, in their legal effect, to " cease and determine " and " null and void."

In Lantz v. Insurance Co., 139 Pa. 546, it was held, as fairly stated in the syllabus : " A life insurance policy stipulated for the payment of quarterly premiums by the assured, providing that if they should not be paid on the dates named and in the lifetime of the assured, the policy should cease and determine, . . . . the consequence of the default of the assured in not paying said premium at maturity, was, that the policy thereupon ceased to bind the company and protect the assured, without any act or declaration on the part of the former." In that case Mr. Justice PAXSON on page 561 said : " It declares that, if not paid on the days named and in the lifetime of the insured, the policy should ' cease and determine.' By this I understand that it is suspended ; it ceases to bind the company and to protect the assured, and this without any act or declaration on the part of the former. It does not require a formal forfeiture." In Duffy v. Alta Friendly Society, 17 Pa. Superior Ct. 531, the language was " otherwise the certificate should be void," and in deciding this case we followed the doctrine of Lantz v. Vermont Life Ins. Co., 139 Pa. 546.

In Hansen v. Supreme Lodge, 40 Ill. App. 216, a by-law provided : " Each member shall pay the amount within thirty days from the date of such notice, failing which he shall stand sus-

pended, and shall not be entitled, etc." In construing this the court said : " By force of the law Hansen was, for failure to pay said assessment No. 175, ipso facto, suspended. No act or proceeding of the lodge was necessary to cut him off from any right to the benefit fund." In Knights of Honor v. Keener, 25 S. W. Repr. 1084, the supreme court of Texas said : " We are of the opinion that it is immaterial whether there was or was not a suspension affected by the lodge. Keener's failure to pay his assessment, ipso facto, worked his suspension."

In the present case there was no appeal by Beeman because of his suspension, nor was there any appeal by his beneficiary, the appellee, from the decision of the supreme lodge in refusing payment of death benefits, notwithstanding that section 165 of the by-laws of the order provides : " In case any dispute or controversy arises by reason of the admission to membership of any person in the order, or the suspension or expulsion of any member from the order, or the death or the proof of death or the payment of the death benefits of any member, or otherwise however, all rights, remedies and means of redress, now or hereafter allowed or provided by the laws of the order, shall first be exhausted by such member or his family, dependents, beneficiaries, or persons claiming his death benefits, before any proceedings at law or in equity shall be commenced against any subordinate lodge . . . . ; and further in case there be a violation of this law, or non-compliance therewith, or a failure within sixty days after such rights, remedies and means of redress are exhausted, to proceed according to law for the adjudication of the matter in dispute or controversy, the decision of the supreme lodge shall be final, binding and conclusive, without right to appeal, any law to the contrary notwithstanding." Beeman as a member of the lodge was bound to know the law and to comply therewith and his beneficiary in maintaining her suit was bound to show a compliance with the provisions of section 165, or that a compliance therewith had been waived or prevented in some way by the lodge. Such by-laws are binding upon the association and its members : Toram v. The Howard Beneficial Ass'n, 4 Pa. 519 ; The Society for the Visitation of the Sick v. The Commonwealth, etc., 52 Pa. 125 ; Wick v. Fraternities Accident Order, 21 Pa. Superior Ct. 507.

So far as this record shows the appellee resorted to a court

of law without making effort to have her alleged grievances righted in accordance with the laws, usages and customs of the order of which her deceased husband had been a member, and for this reason, she did not present a case that entitled her to go to a jury.

We find much in the charge of the learned court below raised by the several assignments of error in conflict with the law as we understand it, applicable to the facts in this case, but feeling compelled to sustain the first assignment of error, the case will thereby be finally disposed of and, therefore, we refrain from commenting upon the other assignments.

The judgment is reversed and judgment directed against the plaintiff.