Brown, Appellant, *v.* Lehman et al., Appellants.

468

Argued April 23, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*William A. Gray,* with him *Barnhart & Adams,* for appellants, Nos. 188-191 and appellee, No. 182.

*B. A. Sciotto,* for appellee, Nos. 188-191 and for appellant, No. 182.

OPINION BY STADTFELD, J., October 2, 1940:

This proceeding was begun by a bill in equity brought by Tony Brown against H. D. Lehman, President, Charles H. Frick, Secretary-Treasurer of Local Union No. 110, International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers of America, and other named defendants.

The bill prayed that an injunction be issued, enjoining and restraining defendants from interfering with plaintiff's right of employment by threats and intimidation, and from threatening and intimidating the employer, N. Cavallo & Bro., with loss or injury to his business because of the employment of plaintiff; it also prayed for such further relief as might be con-

sidered just, proper and equitable. After an answer was filed, the chancellor heard the testimony, which, by stipulation of counsel, was considered as if taken upon final hearing. A decree was then entered, ordering that "all the defendants be enjoined and prohibited henceforth from the commission of the following specific acts, to-wit: from continuing individually or by combination to prevent plaintiff from obtaining employment anywhere except where the employers are under closed shop contract with the said Local Union 110, by the terms of which the respective employer or employers agree to hire only members of the said Union, and in such cases only lawful means may be employed," and awarding the plaintiff, Tony Brown, damages for the loss of wages in the sum of $25 against H. D. Lehman, President, Charles Stutzman, Agent, Merle Lehman, and B. Shaw, members of the union, who were also ordered to pay the cost of the action.

Defendants appealed from the dismissal by the court in banc of their exceptions to the findings and conclusions of the chancellor and to the entry of a final decree; plaintiff also appealed from the entry of the final decree. It is the contention of defendants that plaintiff is entitled neither to an injunction nor to a money decree for damages. Plaintiff, on the other hand, contends that the terms of the injunction, as embodied in the chancellor's decree, are too narrow, insofar as they fail to give the relief prayed for in the bill, and that the award of damages is inadequate.

The chancellor's findings, supported by competent testimony and, with the exception of the forty-first finding, undisputed, establish the facts of the case.

The plaintiff, Tony Brown, was a truck driver, employed, at will, by N. Cavallo & Bro., wholesale grocers, for more than two years prior to November 23, 1938, at a weekly wage of $25. On October 1, 1937, he became a member of the defendant association, Local

Union No. 110, and on October 13, 1937, his employer entered into a written agreement with the Local, in which the union was recognized as the sole bargaining agency of the employees in all matters pertaining to hours, wages and working conditions. This contract provided, inter alia, in Article I (c), that "only employees, members in good standing with Local Union No. 110, International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers of America shall be permitted to haul or handle the products" of N. Cavallo & Bro., and in Article III (b), that "all members must remain in good standing during the entire life of this agreement." By renewal this contract was to expire on May 1, 1939.

After joining the union, plaintiff paid his dues in full until August 1, 1938, and from that date until November 23, 1938, he was in arrears. On the morning of November 23, Charles Stutzman, business agent of the Local Union, went to the business place of N. Cavallo & Bro. and informed one of the partners that plaintiff was in arrears in dues, and that payment thereof was necessary to make him eligible to work under the contract between the firm and the union. He then interviewed plaintiff and informed him of his arrearages. Thereupon plaintiff stated he no longer desired to be a member of the union and Stutzman left the premises.

About five minutes later, a picket carrying a banner bearing the legend "N. Cavallo & Bro. unfair to organized labor", appeared in front of the firm's place of business. Another picket stood in front of the business place of Mr. Lopresti nearby, and two or three other men stood in front of the adjoining place of business of Potter-McCune. The picketing was conducted in an orderly manner from about 9:30 A.M. to about 2:00 P.M. Following the appearance of the pickets, two union employees of N. Cavallo & Bro. quit work, and

plaintiff himself was dismissed by his employer. The pickets were immediately withdrawn and the other employees returned to work. The plaintiff went to the local office of the union and tendered the sum of $37 in payment of the arrearages and fines, but the tender was refused. Shortly thereafter, plaintiff unsuccessfully sought employment with the Puma Company, Lopresti Company and Incardona Beverage Company, all of whom as employers had signed contracts with the local union similar to that of N. Cavallo & Bro.

Pursuant to notice received on November 28, 1938, plaintiff appeared for a hearing before the executive board of the union to answer charges preferred against him for the violation of the agreement existing between his employer, N. Cavallo & Bro., and the union, and for the violation of his obligation to the union.

Section 29 (k-1) of the local union's by-laws provides, inter alia, "any member going (being) in arrears by the 10th of the third month is *automatically suspended,* and if wishing to return in good standing, must pay all back dues and fines, plus a fine amounting to the initiation fee at the time he so desires to reinstate. Before a member can again be reinstated in the Local Union once he is in arrears by the tenth of the third month, he must appear before the executive board and they shall decide whether or not he shall be *reinstated* in the Local Union." (Italics supplied). Sections 45, 90 and 92 of the International Union's constitution provide for appeals from the action of the Local's executive board to the Joint Local Executive Council, or to the General Executive Board, whose decisions are to be regarded as final insofar as the remedies afforded by the laws of the association are concerned.

Having appeared before the executive board of the local, plaintiff was given a hearing upon the charges, and the board then rendered its decision. The chancellor in the court below, in his forty-first finding of fact, to

which defendants filed exception, found "Two motions were made by the members of the executive board, the first was that the plaintiff be put on probation, which failed; the second that he be suspended, which carried." The chancellor construed the action of the executive board as operating to suspend plaintiff's membership in the union from and after the date of the hearing and decision, November 28, 1938. There was no evidence that the action of the executive board sought to institute the suspension of plaintiff. The testimony of the several witnesses present at the board's meeting, together with the minutes of that meeting read in evidence, indicates that the motion before the Board which was finally carried provided that "Brown still stands suspended." In view of this evidence and in view of the association's by-laws providing for *automatic suspension* and a hearing for *reinstatement,* the action of the board can properly be construed only in one way. Plaintiff's automatic suspension, dating prior to November 23, 1938, was continued and reinstatement was refused. Plaintiff took no appeal from the decision of the Local executive board.

The question arising from the proceedings in the instant case, does not, however, involve a claim for damages by reason of the union's wrongful refusal to reinstate plaintiff as a member, or to lift his suspension; nor does it involve an attempt on the part of the plaintiff to compel reinstatement, through the assistance of a court of equity. Hence, the problem raised in this appeal does not properly concern itself with the legality of the by-law providing for reinstatement, nor with the question of the regularity or irregularity of the proceedings before the executive board of the Local on November 28, 1938, resulting in the refusal of reinstatement and in the continuance of plaintiff's suspension from the union. Nor does the question arise as to whether or not plaintiff had exhausted the remedies afforded by the by-laws of the association and by the constitution of

the International Union, prior to seeking the aid of the courts by instituting the present proceedings. In a proceeding to compel reinstatement, however, these questions might properly require consideration.

The principal issue involved here, is whether a union employee, who, under the by-laws of the organization, has been automatically suspended for failure to pay dues, is entitled to a decree restraining the members of the association from interfering with his employment by an employer who has entered into a closed shop contract, providing for the employment only of members in good standing with the association.

Relief against the actions of the members of the defendant association is sought by the plaintiff-employee alone. The employing firm, N. Cavallo & Bro., is not a party to the proceeding, and has expressly disavowed any claim for injury or damage. What right, if any, the employing firm may have under the circumstances of this case is not before us. The dispute is between an employee and the members of his union.

It appears to be conceded on both sides that the dispute here involved, originating with a default in payment of union dues, is not a "labor dispute" within the meaning of the Labor Anti-Injunction Act of June 2, 1937, P. L. 1198, Sections 2 and 3 (43 PS §§206, b and c). We, therefore, consider the question here involved apart from the effect of that Act.

The plaintiff, Tony Brown, while employed by N. Cavallo & Bro., joined the defendant association on October 1, 1937, and continued in his employment on October 13, 1937, when his employer entered into the closed shop contract with this union, as the sole bargaining agency. The validity of this closed shop contract has not been questioned in the court below and the legality of this type of contract has been recognized by the Pennsylvania Labor Relations Act of June 1, 1937, P. L. 1168, §6 (c), as amended and re-enacted

474

by the Act of June 9, 1939, P. L. 293, §6 (1c), (43 PS §211.6).

In joining the union, plaintiff bound himself to the rules and regulations of the association. For it is well recognized that the constitution and by-laws of a voluntary association are binding upon its members, who are chargeable with knowledge of the laws and rules of the organization, and who, by becoming members, are to be deemed to have engaged to be bound by them, except where they involve a surrender of a personal or constitutional right, or contravene public law or public policy: Oakes, Organized Labor and Industrial Conflicts (1927), Chapter 2, Sec. 10.

While in the instant case no question is raised as to legality of the by-law providing for automatic suspension by reason of default in the payment of dues, the validity of a similar provision has been recognized in our law in an early case involving a voluntary beneficial association. In the case referred to, *Beeman v. Supreme Lodge,* 29 Pa. Superior Ct. 387, affirmed in 215 Pa. 627, 64 A. 792, a particular by-law of the order, covering assessments, provided that "Each member shall pay the amount according to age, as per table, and any member failing to pay the same on or before the last meeting night of each month shall stand suspended from the order and all benefits therefrom." Referring to a member who had failed to get his assessment in on time, this court said, p. 396: "It is the member himself, who, by violating the laws of the order, works his own suspension through the nonpayment of his assessment", and cited cases from other jurisdictions holding that under the provisions of a by-law, the failure to pay an assessment, ipso facto, works a suspension. In the case before us, plaintiff did not merely fail to get his dues in on time, he flatly refused to pay them at all when requested to do so by the business agent of the union, and at the same time expressed his desire to

withdraw entirely from the association. It was only after he had been discharged from his employment that he made any tender of the money due the organization. This tender was, from the union's point of view, regarded as having come too late; the association could then merely suggest an application for reinstatement in accordance with the by-laws of the organization.

In continuing in the employ of N. Cavallo & Bro. on October 13, 1937, when that firm entered a closed shop contract with the defendant association as the sole bargaining agency, plaintiff's employment became subject to the provisions of that contract which provided, inter alia, that only members in good standing with the union shall be permitted to haul or handle the products of the firm. Having lost his good standing with the union by reason of being automatically suspended for failure to pay arrearages in dues, plaintiff became ineligible to work for his employer under the terms of the contract with the union. This was the status of plaintiff on November 23, 1938, when his discharge was secured by the union. Can it be said that under these circumstances the defendant association was guilty of a tortious interference with plaintiff's right of employment in obtaining his dismissal on November 23, for which plaintiff is entitled to equitable relief and damages?

In *Dorrington et al. v. Manning et al.,* 135 Pa. Superior Ct. 194, 4 A. (2) 886, plaintiffs, former employees of a bus company, were refused admission to a newly organized division of the defendant labor association, which was composed entirely of employees of the bus company and other companies, and which had entered into a closed shop contract with the bus company; plaintiffs were later discharged by their employers in consequence of a strike called by defendants. Stating that the dispute involved grew out of plaintiffs endeavoring to get into a union, under an agreement, while the union

was trying to keep them out, this court said, p. 201: "The record does not definitely show why the defendants rejected the plaintiffs from their association or give a reason for seeking plaintiffs' discharge. It is quite apparent, however, in view of the action of the defendants in denying their applications for membership, that it was not for the purpose of getting them to join the defendant association. The record and findings of the chancellor fully warrant the conclusion that defendants intentionally, wilfully, and maliciously deprived plaintiffs of their employment."

The decision of the court in that case, finds support in the Restatement of The Law of Torts (Vol. 4) Sec. 810, which states the applicable rule as follows: "Workers who in concert procure the dismissal of an employee because he is not a member of a labor union satisfactory to the workers are ...... liable to employee if, but only if, he desires to be a member of the labor union but membership is not open to him on reasonable terms."

The present case is clearly distinguishable from the Dorrington case. The plaintiff in this case was not prevented from joining the union; on the contrary, he refused to place himself in good standing by paying up his arrearages when he still had the opportunity to do so, prior to the union's action resulting in his discharge, and he even expressed a desire to withdraw from the union in the face of the union's request for the payment of back dues. By his own action, plaintiff refused to remain a member of the union in good standing. Under these circumstances is there any justification for the course of conduct adopted by the defendant association with a view to enforcing the provisions of its contract with the firm and in procuring the discharge of the plaintiff?

Comment (a) of the section of The Restatement hereinbefore referred to, states, "The justification for harm caused the individual employee who loses his job when

he refuses to be—a term which includes both his be-coming and his remaining—a member of the union rests in the necessity of united action by workers. They may correctly believe that the worker who belongs to a rival organization or to no organization and does not conform to their discipline, or contribute to the support of their united efforts, or join with them in their attempts to better themselves, is willing to compete with them out-side of the union and constitutes a threat to the em-ployment standards which they have won for them-selves. They may, therefore, take action against him." It is thus recognized that the union, acting not for the injury of an employee but for the legitimate advance-ment of its own interests, is not liable to the employee by reason of his loss of employment. In the absence of any maliciousness or wanton desire to injure an em-ployee, the conduct of the union, seeking to enforce the provisions of its contract with the employer resulting in the discharge of an ineligible employee does not constitute a tortious interference with his employment.

The conclusion here reached is in accord with, and in support of so much of the chancellor's decree in the court below as refused to restrain the action of the defendant association aimed at preventing the employ-ment of plaintiff by employers under a closed shop contract with the association. That part of the decree, however, which enjoins and prohibits all the named defendants from continuing individually or by combina-tion to prevent plaintiff from obtaining any employment other than in closed shops, requires separate considera-tion.

A careful review of the testimony fails to disclose any evidence to support a finding of fact that the de-fendant association or any named defendant, partici-pated in any action, or threat of action, calculated to interfere with plaintiff's employment by an employer who was not a party to a closed shop agreement with

the defendant association. No such finding was made by the chancellor. The only relevant finding in this matter was the thirty-first, which states in effect that plaintiff had sought employment with three separate companies, each of which had signed contracts with the defendant association similar to that signed by N. Cavallo & Bro. and each of which had refused him employment because "they had their own headaches".

An injunction is a very drastic remedy, the use of which should be restricted except upon clear and convincing testimony of an intended or threatened injury: *Shryock v. Association of United Fraternal Buyers, Inc.*, 135 Pa. Superior Ct. 428, 433, 5 A. (2) 581. In the absence of any proved facts, as found by the chancellor, that would serve as a basis for equitable relief from interference by the defendants with possible employment generally, the enjoining decree of the chancellor is, in this respect, unwarranted.

One other feature of this case remains for consideration. The chancellor decreed that damages be awarded against the defendants, H. D. Lehman, Charles Stutzman, Merle Lehman and B. Shaw, in the sum of $25. This ruling was based on the view that the period between November 23, 1938, when plaintiff was discharged, and November 28, 1938, the date of plaintiff's hearing before the executive board of the Local, constituted an interval during which plaintiff was unlawfully deprived of his work. In other words, the chancellor held that the union, its officers and members wrongfully procured the discharge of plaintiff on November 23, rather than delaying action until after the hearing on November 28. In this respect the court below erred. In view of what has already been said in this opinion, it is clear that the plaintiff automatically suspended himself from the union, and that he thereby became ineligible to work for an employer who had agreed with the union to employ only such members as were in good standing.

Plaintiff's obligation to the union required the payment of dues in order to remain in good standing, and having failed to fulfill his obligation prior to November 23, he then stood suspended and ineligible to work. Defendants being, in our opinion, free from any unjustified, malicious or tortious interference with plaintiff's employment, no damages may properly be imposed upon all or any of them.

Plaintiff's appeal must, therefore, be dismissed, and defendants' appeal sustained.

Accordingly, the decree of the court below is reversed and the bill is dismissed at the cost of the plaintiff in the court below.