## O'Hara et al. v. Teamsters, Chauffeurs, Warehousemen and Helpers Local Union No. 470

*William T. Connor* and *Hardie Scott*, for complainants.

*W. A. Gray* and *E. Davis*, for respondent.

Bok, P. J., April 28, 1948.—This is a bill in equity brought by five alleged members of a labor union, asking the court to enjoin the union from interfering with their employment and their membership in the union, and to order an election.

An answer being filed, testimony was heard on January 26, 1948. Requests were filed on March 4th and 15th.

*Findings of fact*

1. Defendant is a labor union organized and functioning since 1902.

2. Defendant labor union is affiliated with the International Brotherhood of Teamsters and the Teamsters Joint Council No. 53, and maintains its offices at 440 East Girard Avenue.

3. Defendant union has a collective bargaining agreement with Scott Brothers, a common carrier by motor truck, which agreement, containing a closed shop provision, was in effect in March of 1946.

4. All of the plaintiffs prior to March 12, 1946, were employed by Scott Brothers, as truck drivers.

5. On March 12, 1946, plaintiff Stanley J. Wojtkielewicz and plaintiff Anthony J. O'Hara failed to report to work at Scott Brothers.

6. On March 12, 1946, plaintiffs Leon Andrews, Bernard H. Phillips and V. Samuel Festino, after reporting to work and taking out their trucks to make deliveries, brought their trucks back to the garage of Scott Brothers, their employer, and although ordered to do so, refused to continue to work and checked out, despite the fact that they were advised that by doing so, they would be considered to have voluntarily quit their jobs.

7. On March 13, 1946, plaintiffs Leon Andrews, Bernard H. Phillips and V. Samuel Festino, were told by the employer that since they "clocked" themselves out they quit their jobs, in accordance with a rule of Scott Brothers, the employer, that if an employe pulls in off the street or "clocks" himself out, he automatically quits his job.

8. In March of 1946 Scott Brothers engaged in delivering and hauling of freight and had between 200 and 300 employes driving trucks, and the only three employes who pulled their trucks in and "clocked" themselves out, were plaintiffs Leon Andrews, Bernard H. Phillips and V. Samuel Festino.

9. On March 13, 1946, plaintiffs Stanley J. Wojtkielewicz and Anthony J. O'Hara reported to Scott Brothers between 9 and 10 a.m. without having the usual driver's working clothes, and they were told to report to defendant union.

10. On March 13, 1946, plaintiffs Leon Andrews, Bernard H. Phillips and V. Samuel Festino were advised by the secretary-treasurer of the union that he could not do anything for them at Scott Brothers because they had voluntarily quit their jobs the day before.

11. On March 13, 1946, plaintiff Stanley J. Wojtkielewicz was advised by the secretary-treasurer of the union that he considered him to have violated his oath as an officer of the defendant local in participating in an illegal strike.

12. On May 2, 1946, charges were filed against plaintiff Stanley J. Wojtkielewicz and against plaintiff Anthony J. O'Hara charging them with having participated in an illegal strike and with violating the International constitution. The said charges were duly received by plaintiffs Stanley J. Wojtkielewicz and Anthony J. O'Hara.

13. On June 4, 1946, plaintiffs Stanley J. Wojtkielewicz and O'Hara, were suspended from membership in defendant union by the executive board, acting as a trial board on the charges filed May 2, 1946.

14. Plaintiffs Stanley J. Wojtkielewicz and O'Hara, in accordance with the provisions of the International constitution, by letters dated June 11, 1946, to the Teamsters Joint Council No. 53, appealed from the decision of defendant union's executive board, acting as a trial board, suspending them from membership.

15. After a hearing held before the Teamsters Joint Council No. 53 on August 21, 1946, at which time plaintiffs Stanley J. Wojtkielewicz and Anthony J. O'Hara were present and were represented by counsel, the Teamsters Joint Council No. 53, the appellate body,

on September 9th sustained the action of defendant union in connection with the expulsion of plaintiffs Stanley J. Wojtkielewicz and Anthony J. O'Hara.

16. Defendant union has never received any notification that an appeal was made by plaintiffs Stanley J. Wojtkielewicz and Anthony J. O'Hara, from the decision of the Teamsters Joint Council, and no evidence was produced that such an appeal was taken.

17. Plaintiffs Leon Andrews, Bernard H. Phillips, and V. Samuel Festino have not paid dues to the union since March 1946, June 1946, and April 1946, respectively.

18. On March 12, 1946, groups of men toured the City of Philadelphia and attempted to stop the trucks driven by truck drivers, intimidated the said truck drivers, including the truck drivers employed by Scott Brothers, and attempted to declare an "illegal strike".

19. Plaintiff Bernard H. Phillips was identified as one of the men stopping trucks on March 12, 1946.

20. Prior to March 12, 1946, to wit, on March 8, 1946, and March 11, 1946, meetings were held in which plaintiffs, Stanley J. Wojtkielewicz and Anthony J. O'Hara participated for the purpose of arranging for a "wild-cat strike" on March 12, 1946.

21. Richard Camarote, the union steward at Scott Brothers, was invited to attend the meeting of March 8, 1946, and was told by plaintiffs Stanley J. Wojtkielewicz and Anthony J. O'Hara, that they proposed to "strike" Scott Brothers, in order to throw out the officers of the union, so that Wojtkielewicz could take over the union himself.

22. John Hayes, a member of an affiliate union, Local 107, attended the meetings of March 8, 1946, and March 11, 1946, at which plaintiffs Stanley J. Wojtkielewicz and Anthony J. O'Hara were present and plans were laid to call an illegal strike and stop trucks. John Hayes participated in the stopping of trucks on March 12, 1946, for a couple of hours and gave up be-

cause he saw that he was "with a bunch of chickens". Thereupon, he reported the entire matter to his own local union.

23. Defendant union, in March of 1946, was governed by its own constitution and by the constitution of the International Brotherhood of Teamsters.

24. Copies of the constitutions are supplied to all new members at the time of the filing of their application, and are made available to all members of the union upon request.

25. Article 6, sec. 6, p. 19 of the International constitution sets forth the power of the general president to appoint trustees and gives the duties and obligations of locals under the trusteeship.

26. In the year 1939 Thomas O'Brien was appointed trustee of defendant union, and he appointed all officers then in office to remain in their respective jobs.

27. During the year 1941 Edward P. Crumback was appointed trustee in place of Thomas O'Brien, and at that time said Edward P. Crumback appointed all of the officers then in office to remain in their respective offices.

28. The officers appointed by the trustee, Edward P. Crumback, included plaintiff Stanley J. Wojtkielewicz, as vice president of the union, and said plaintiff held that office and exercised all his duties until his suspension in June 1946.

29. In December 1943, while Edward P. Crumback was acting as trustee, a motion was made, seconded and unanimously passed that the International Brotherhood of Teamsters be requested to terminate the trusteeship, and that all of the officers of the defendant union be nominated and elected for a period of five years.

30. The minutes of February 13, 1944, disclosed that the trustee recommended to the International president that self-government be restored in defendant union and expressed his approval of the unani-

mous action of defendant union in electing the officers for a term of five years, and that subsequently the receivership was lifted.

31. Among the officers elected at that time was plaintiff, Stanley J. Wojtkielewicz, who accepted the office of vice president without objection and performed his duties thereafter until he was expelled.

32. The next nomination for officers will take place in November 1948, and the election in December 1948.

33. A complete system for the filing of charges for trials and appeals by the members of the union is set forth in article XVIII, sec. 1 to 13, inclusive, of the International constitution, including the right to file charges against officers.

### Discussion

I am asked to do two things, neither of which I am willing to do. One is to restrain defendant union from interfering with plaintiffs as truck drivers and members of the union. The other is to conduct an election of officers.

The standing of plaintiffs to maintain such a bill and prayer is the first and most important question.

It is of no great moment in this case whether the union's affairs are governed by the local's constitution and bylaws (plaintiffs' Exhibit 1), or by those of the International (defendant's Exhibit 4). Schultz, the local's president, said that the former was in effect until 1940 and the latter thereafter, but he seemed to be talking only about "bylaws". If he meant everything in the two booklets, he covered far too much ground, for plaintiffs' Exhibit 1 contains four separate things: "constitution", "bylaws", "trials", and "rules of order". While bylaws and rules can be changed pretty much at will, it is inconceivable to me that the constitution of even an unincorporated body can be discarded or superseded informally. At least I am unwilling to accept the bare statement of any such action without evidence of it—a motion on a minute

book, or a certified copy of one, or some other formal and persuasive record. There is no such evidence here.

The result is that I consider both constitutions as being in effect for the purpose of this case, to the extent that the local constitution does not conflict with the International's. And I see no pertinent conflict.

The consequence is that the parties are bound by the constitutions: Brown v. Lehman et al., 141 Pa. Superior Ct. 467 (1940); O'Neill et al. v. United, etc. Plumbers et al., 348 Pa. 531 (1944).

Plaintiffs O'Hara and Wojtkielewicz were expelled from the local after written charges had been preferred against them and hearings given them in accordance with the constitutions. These plaintiffs did not pursue their appeals to the International. The procedure is set out in article XVIII of the International constitution, and section 13 of that article provides as follows:

"Sec. 13. Every member or officer of a Local Union, Joint Council or General Officer of the International, against whom charges have been preferred and disciplinary action taken as a result thereof, shall be obliged to exhaust all remedies provided for in this Constitution and by the International before resorting to any other court or tribunal."

In Trainer v. International Alliance etc., 353 Pa. 487 (1946) the court held:

"Courts will not entertain jurisdiction unless all remedies afforded by the By-Laws and Constitution of an association have been exhausted, for it is from them that the rights of the members are derived and determined. . . ."

The sentence of expulsion, not fully appealed from, therefore stands, and it follows that O'Hara and Wojtkielewicz are not members of the union and have no standing to force an election or to enjoy union advantages in the matter of employment. And there is no evidence that the union has, beyond whatever

effect expulsion may have, done anything to prevent these plaintiffs from securing work elsewhere.

As for the reason for their expulsion, I am convinced by the evidence that these men fomented and participated in the wildcat strike, and that they committed one of the offenses specifically named in article III, sec. 4 of the local constitution.

The three remaining plaintiffs—Andrews, Phillips, and Festino—are in a different position. I hold that they are still members of the union. Article X, sec. 6(c) of the International constitution provides that members must pay dues on or before the first day of the current month, in advance. Article II, sec. 12, of the local constitution provides that a member who is a month in arrears "shall be suspended and fined one dollar ($1.00)": furthermore, that certain notices must then be sent and certain actions taken by the president and secretary-treasurer. There is no evidence of any such suspension, fine, notice, or action.

The constitutions refer once or twice to "expulsion or suspension", indicating a difference, but although I am asked to declare these three plaintiffs to be "not in good standing", I am uninformed by any evidence of what "good standing" is or of what the effect of not being in it might be. Defendant asks me to infer that a man not paying dues would be "not in good standing", from article XXII, sec. 1(k) and 1(o). These sections could be slanted that way, but not necessarily so, for not paying dues and not being in good standing (for what reason?) may be quite separate things.

The officers of the union testified that no charges had been preferred against these men, but that, with no explanation directly assigned, they were not in good standing. Without charges against them, the men rather than the union are entitled to the inferences. And in any event, not paying dues is not stated as carrying automatic expulsion or suspension: nor does "not in good standing", even because of failure

to pay dues, have any stated result, so far as this action is concerned.

Andrews, Phillips, and Festino are therefore members, capable of maintaining this suit, and it makes no difference whether they stopped paying dues or tried to and were refused. I need not attempt to define their status as members: the constitutions give them the right and the method by which they can raise the question if they want to. But there is nothing I can do for them, for I accept the union's position that they quit their jobs voluntarily under the regulations of their employer, Scott Brothers, and there is no evidence that the union has tried to prevent their getting other work.

I shall not at this time order an election, in view of the testimony by the union officials that one is to be held this November or December. I will hold these proceedings open to the extent of allowing a renewal of the prayer to order an election if one should not be held as anticipated. I am constrained to observe that the so-called election of 1943 was not legal. The International constitution provides, in article XXI, sec. 1(e), that the nomination of officers shall take place in November or December and the election shall follow at the next meeting. The local, in its rules of order (page 24 of plaintiffs' Exhibit 1), has provided that officers shall be elected every three years. Whether or not these rules of order are still effective, they state a necessary legal policy—that the ways of democracy require frequent election. The O'Neill case, supra, has already held that twelve years is not "frequent", and it is now just 12 years since this local has had a proper election. It should be unnecessary to labor the point.

Without prejudice to further recourse under this term and number in case an election of officers is not held next November or December, this bill must be dismissed.

*Conclusions of law*

1. Plaintiffs Stanley J. Wojtkielewicz and Anthony J. O'Hara were expelled from membership in defendant union prior to the commencement of this action, and after due hearing by the executive board of defendant union, and in accordance with the International constitution, under which defendant union and its members were regulated.

2. Plaintiffs Stanley J. Wojtkielewicz and Anthony J. O'Hara acting in accordance with the provisions of the International constitution, appealed from the decision of the executive board of defendant union to the Teamsters Joint Council No. 53, the appellate body, and after a hearing in which said plaintiffs participated, the action of defendant union in expelling said plaintiffs was sustained by the Teamsters Joint Council No. 53, and the said plaintiffs were notified accordingly.

3. No evidence was presented which indicated that an appeal was taken from the decision of the appellate body, to wit, the Teamsters Joint Council No. 53, by plaintiffs Stanley J. Wojtkielewicz and Anthony J. O'Hara.

4. In accordance with article XVIII, sec. 2(*b*) (defendant's Exhibit No. 4, page 55) "Pending any appeal, the decision appealed from shall remain in full force and effect."

5. No evidence having been presented that the decision of defendant union was· overruled, plaintiffs Stanley J. Wojtkielewicz and Anthony J. O'Hara are not members of defendant union, and therefore have no rights in defendant union.

6. Plaintiffs Leon Andrews, Bernard H. Phillips, and V. Samuel Festino are members of defendant union, and are entitled to maintain this action.

7. The evidence clearly discloses that plaintiffs Stanley J. Wojtkielewicz and Anthony J. O'Hara participated in an illegal action and in an illegal plan to

cause a "wild cat strike" in the City of Philadelphia, and particularly at Scott Brothers, Inc., where all of plaintiffs were employed, for the specific purpose of obtaining physical control of defendant union for their own purposes and contrary to the best interests of defendant union.

8. Defendant union has been operated under the International constitution of the International Teamsters Union, since 1940, and under the constitution of the local union, and plaintiffs are bound by the rules and regulations of the said constitutions and are chargeable with knowledge thereof.

9. The failure of plaintiffs O'Hara and Wojtkielewicz to exhaust all the remedies afforded them by the constitution and bylaws of said defendant union, from which constitution their rights as members are derived and determined, precludes plaintiffs invoking the jurisdiction of this court, until such remedies are exhausted, particularly since there is no evidence that such action within the framework of the organization would prove to be a vain action.

10. The evidence clearly establishes that plaintiffs Leon Andrews, Bernard H. Phillips and V. Samuel Festino voluntarily separated themselves from their jobs as truck drivers at Scott Brothers, Inc., of Philadelphia on March 12, 1946.

11. No evidence has been presented that defendant union interfered at any time with plaintiffs Leon Andrews, Bernard H. Phillips and V. Samuel Festino in their employment as truck drivers in the City of Philadelphia.

12. Defendant union has not unlawfully interfered with plaintiffs, either in their effort to obtain employment as truck drivers or as members of defendant union.

13. The bill of complaint filed by plaintiffs herein should be dismissed.

*Decree nisi*

And now, April 28, 1948, in consideration of the foregoing, the bill is dismissed.