Dorrington et al. *v.* Manning et al., Appellants.

Argued December 19, 1938.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker and Rhodes, JJ.

*Frank P. Slattery,* with him *Rutledge Slattery, Charlton Ogburn* and *Arthur E. Reyman,* for appellant.

*Max Rosenn,* for appellees.

Opinion by Baldrige, J., March 16, 1939:
The plaintiffs are former employees of the Frank

Martz Coach Company, Inc., who were refused admittance to the newly organized Division No. 1119 of the defendant association, composed entirely of employees of the Frank Martz Coach Company, Inc., (hereinafter called the Coach Company), White Transit Company, Inc., and Frank Martz Estate, Inc. They were later discharged by their employer in consequence of a strike called by defendants for the primary purpose of forcing the employer to dismiss the plaintiffs.

The bill in equity, brought against the defendant association and its officers, prayed that an injunction be issued, enjoining and restraining defendants from interfering with the plaintiffs' rights to membership in the defendant association, from malicious interference with their employment, and sought to recover damages from defendant for their loss of employment. After an answer was filed, the chancellor heard testimony, which, by agreement of the parties, was considered as if taken upon final hearing, and entered a decree, enjoining and prohibiting "the defendants and all members of the said Local Division ...... from continuing in combination to prevent, by threats of strike, or by menace, force, or display of force, the complainants above named, who have already been discharged upon the demand of the defendants, from obtaining reinstatement to their respective positions with their employer, the Frank Martz Coach Company," and awarded to each of the plaintiffs, Frank Federo and Stephen Strey, damages for loss of wages in the sum of $416; and to William Dorrington, $420.

Defendants appealed from the dismissal by the court in banc of their exceptions to the findings and conclusions of the chancellor and to the entry of a final decree in plaintiffs' favor.

The appellants' first four assignments relate to alleged errors in conclusions of law; the fifth, and last, covers objections to the admission of evidence.

The facts are not in serious dispute, but an under-

standing of this controversy requires that they be stated in some detail.

The plaintiffs were bus drivers, having been employed by the Coach Company for periods from seven to fifteen years. Previous to the spring of 1937, when the defendant association was organized, plaintiffs, with other employees of the Coach Company, were members of an independent union, known as Wyoming Valley Drivers and Truckers Association. When the new association was first organized, they refused to join, but by May 18, 1937, all of the one hundred and forty drivers of the Coach Company, except the plaintiffs, one Taylor, and another employee who voluntarily quit work, had been enrolled in the defendant association as charter members. On that date, the defendant association held a meeting, at which was carried a motion that "all employees of the company who have not as yet joined the Local be given five days to make application for the same. They are to pay the entrance fee and all back dues."

No notice was given plaintiffs of this action, but each heard of it, and on May 20, 1937, signed an application which was presented to and left with the president of the defendant association, together with $5, which covered initiation fee and two months' dues, who assured them that the union cards would be delivered at a meeting of the Local, to be held May 22, 1937. A vote was taken at this meeting, at which only thirty-six members were present, and plaintiffs' requests for membership were rejected. This was followed by a meeting on May 25th, at which one hundred and fifteen were present and plaintiffs' applications were again submitted. A majority of the votes cast were favorable to plaintiffs, but as the "Constitution and General Laws" of the defendant association provided that a three-fourths vote was necessary for admission, the plaintiffs were deprived of membership. Sometime thereafter,

each plaintiff's deposit of $5 was returned by checks of the defendant association.

There was some dispute as to when the charter list was closed, but that date is not definitely disclosed in this record. It does appear that plaintiffs were the first employees of the Coach Company whose admission to the defendant association was voted upon, the other one hundred and forty being admitted without vote under the charter list. There was also evidence that several employees of the Coach Company were admitted to membership after plaintiffs were excluded without any vote being taken.

The defendant association entered into a collective-bargaining agreement, dated May 6, 1937, but not executed until May 23, 1937, with the Coach Company, which provides: "Section III: Any person seeking employment, if accepted by the Company shall become a member of the Association within a period of Sixty (60) days from the date of employment, and shall remain a member of the Association in good standing during the period of employment. All members of the said Association shall comply with the rules of the Company and with the laws of the Association or be dismissed from the service in accordance with the Company's rules or the Association's constitution and general laws."

Several conferences were held between the officers of the defendant association and the executives of the Coach Company, at which the former insisted upon the discharge of the plaintiffs. The Coach Company having refused this demand, the defendant association, at a meeting held June 6th, voted to call a strike on June 8th for the purpose of forcing the employer to dismiss the plaintiffs. The strike, which lasted but a few hours, accomplished the object of the defendant association as the plaintiffs were discharged the same day, although an officer of the employer testified that

their relations with the plaintiffs had been very satisfactory.

We will not discuss the assignments of error in their regular order but will first dispose of the fourth, which relates to the following finding of fact, based upon section III, supra, of the agreement aforesaid:

"9. The collective-bargaining agreement was executed by the Coach Company with the representatives of the Union upon the distinct oral understanding that all existing employees should be retained by the Coach Company and become members of the Union, as is expressed in section 3 of the agreement set forth in the eighth finding of fact."

Appellants complain of the chancellor's interpreting that section to mean that the union was bound thereunder to accept as a member any person whether then in the employ or hired thereafter by the employer. We do not construe the section to mean that the defendant association is obliged to admit to its membership every one subsequently employed by the Coach Company. That question, however, is not involved in this appeal as we are only considering the rights of the plaintiffs, and it is unnecessary to discuss it.

Appellant's fifth assignment is directed to the admissibility of the testimony of the president of the Coach Company, upon which the chancellor relied to sustain his conclusion that the collective-bargaining agreement was executed between the employer and the union "upon the distinct oral understanding that all existing employees should be retained by the coach company and become members of the union."

This testimony, in our judgment, was admissible to explain the language of section III of the collective-bargaining agreement, the construction of which is in dispute. It does not specifically deal with the question of plaintiff's admittance into the defendant association; it is ambiguous on this point. There is a conflict of opinion as to its meaning and evidence of an oral agree-

ment to accept all existing employees, including the plaintiffs, into membership was admissible to throw light on the intention of the parties thereto and to show the circumstances attending the execution of the contract. As stated in *Sarver's Est.*, 132 Pa. Superior Ct. 238, 244, 200 A. 709: "A written instrument is always open to explanation, even by parol or extrinsic evidence, where it is fairly susceptible of two constructions, or where its meaning is obscure or ambiguous: [citing cases]." See, also, *Henry's Pennsylvania Trial Evidence*, pp. 384, 387, §§353, 357. In *Security Trust Co. v. Stapp et al.*, 332 Pa. 9, 13, 1 A. 2d 236, the court said: "It is well settled that where a contract is ambiguous, either party may produce evidence to resolve the ambiguity."

The first assignment relates to the final decree, and the third alleged error in the court's conclusion that "The refusal of the members of the association to accept plaintiffs into membership except for cause shown was a violation of the closed shop agreement; the pressure brought upon the employer by declaring a strike and thus forcing the discharge of the plaintiffs was a conspiracy to do an unlawful act and constitutes a virtual boycott ......"

From the facts found, the chancellor concluded, in substance, that the defendants' conduct in coercing the employer to discharge the plaintiffs, who were arbitrarily refused admission to the association, constituted a malicious and wilful interference with plaintiffs' contract of employment and a conspiracy to do an unlawful act.

Passing for the present the effect of the Pennsylvania Labor Anti-Injunction Act of June 2, 1937, P. L. 1198 (43 PS §206a), which we will discuss later, the question arises whether the acts of the defendants constituted such an unlawful interference with plaintiffs' contractual rights that a court of equity could properly have granted relief prior to the Labor Anti-Injunction Act.

There can be no doubt that members of a union are within their legal rights in determining not to work with one not a member of its union or with non-union men. The right to work, however, in a general sense, constitutes a property right, the continued interference with which equity will enjoin where the legal remedy is inadequate. As Mr. Justice LINN, quoting from *Angle v. C. St. Paul, Etc. Rwy Co.*, 151 U. S. 1, 13, 38 L. ed 55, stated in *Caskie v. P. R. T. Co.*, 321 Pa. 157, 159, 184 A. 17: "'It has been repeatedly held that, if one maliciously interferes in a contract between two parties, and induces one of them to break that contract to the injury of the other, the party injured can maintain an action against the wrongdoer.' ...... For such interference, an action in tort lies." See also, *Klauder v. Cregar et al.*, 327 Pa. 1, 192 A. 667.

The record does not definitely show why the defendants rejected the plaintiffs from their association or give a reason for their seeking plaintiffs' discharge. It is quite apparent, however, in view of the action of the defendants in denying their applications for membership, that it was not for the purpose of getting them to join the defendant association. The record and findings of the chancellor fully warrant the conclusion that defendants intentionally, wilfully, and maliciously deprived plaintiffs of their employment. As Mr. Justice SCHAFFER, in *Klauder v. Cregar et al.*, supra (p. 7), quoting from *Campbell v. Gates*, (N. Y.), 141 N. E. 914, stated: "Maliciousness does not necessarily mean actual malice or ill-will, but the intentional doing of a wrongful act without legal or social justification."

In *Erdman v. Mitchell*, 207 Pa. 79, 56 A. 327, the Supreme Court affirmed a decree awarding an injunction against the defendant union, which, by a strike, had caused the plaintiff plumbers, who refused to join the union, to be discharged from a building operation. Mr. Justice DEAN there held that defendants' conduct in interfering with plaintiffs' right to work amounted to

a conspiracy to do an unlawful act and could be enjoined.

In the recent case of *Mische et al. v. Kaminski et al.*, 127 Pa. Superior Ct. 66, 193 A. 410, members of the defendant United Mine Workers of America who had refused to work with plaintiffs because they, formerly members of the defendant union, had joined a new union, by force, violence, and threats conspired and caused the employer to discharge plaintiffs. We affirmed the court below in holding that the conduct of members of the defendant union amounted to a tort which equity would enjoin and for which damages could be recovered.

The present case is much stronger and the unlawful act more apparent than in either the Erdman or Mische cases, for, here, plaintiffs were desirous of joining the defendant association or union and were arbitrarily denied admission. There can be no question that the defendants knew that their action, which was entirely unjustifiable as no reason was disclosed therefor, would inevitably result in depriving the plaintiffs of their existing employment. Even in cases arising before the Act of 1937, supra, the strong arm of an equitable injunction was never used, unless, as here, property rights were unlawfully damaged or destroyed: *Kirmse et al. v. Adler et al.*, 311 Pa. 78, 166 A. 566.

The second assignment alleges that the court erred in its conclusion "That the controversy here presented does not constitute a labor dispute within the meaning and intent of the Labor Anti-Injunction Act of 1937, P. L. 1198."

In section 2, the public policy of this statute is declared and includes the statement that an individual worker "should be free to decline to associate with his fellows" as he should have "full freedom of association ......and that he shall be free from interference, re-

straint or coercion......" Section 3 [1] of the act defines a "labor dispute."

Our Pennsylvania Act is modeled after the Norris-LaGuardia Act of March 23, 1932, c. 90, 47 Stat. 70 (29 USCA 101-115). The construction to be given the later act and similar statutes in force in many states has been determined by various courts. See Annotations, "Validity and effect of statutes restricting remedy by injunction in industrial disputes": 97 A.L.R. 1333, 106 A.L.R. 361.

Thus far, there are no decisions of our appellate courts interpreting the phrase "labor dispute," as used in our act. In *Main Cleaners & Dyers, Inc. v. Columbia Super Cleaners, Inc. et al.*, 332 Pa. 71, 2 A. (2d) 750 Mr. Justice STERN held that the court below had general jurisdiction to entertain a bill, even though it might ultimately appear to be without power to issue an injunction as prayed for because the case involved, or grew out of, a labor dispute as defined by section 3 of the Act of 1937, supra, stating: "The fact that a labor dispute may be involved does not take the litigation out of this jurisdictional class. All that the Act of June 2, 1937, P. L. 1198, in effect provides is that, in any case involving or growing out of a labor dispute, the court shall not have the power to issue injunctions

---

[1] Section 3. When used in this act and for the purposes of this act—

"(a) A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in a single industry, trade, craft or occupation, or have direct or indirect interests therein, or who are employes of the same employer, or who are members of the same or an affiliated organization of employers or employes, whether such dispute is—(1) between one or more employers or associations of employers, and one or more employes or associations of employes; (2) between one or more employers or associations of employers, and one or more employers or associations of employers; or (3) between one or more employes or association of employes, and one or more employes or associations of employes; or when the case involves any conflicting or

to prohibit the particular acts specified in sections 6 and 7."

The recent decisions of the United States Supreme Court, cited by appellants, do not control the present case. In *Senn v. Tile Layers' Protective Union et al.,* 301 U. S. 468, 81 L. ed. 1229, 57 Sup. Ct. 857, a union of tile layers sought by peaceful picketing of Senn (an individual independent tile layer who employed others at times but did much of the work with his own hands) to induce him to join their union. He refused unless article 3 of the union agreement was eliminated, permitting him to do his own manual work without using journeyman members. Senn sought an injunction against the picketing, which was denied by the trial court who found that a "labor dispute" was involved within the Wisconsin Act; the Supreme Court of Wisconsin affirmed. The United States Supreme Court, speaking through Mr. Justice BRANDEIS, held that the Wisconsin court's construction as to there being a "labor dispute" under its statute was final. In pointing out that the statute was not unconstitutional under

---

competing interests in a 'labor dispute' (as hereinafter defined) of 'persons participating or interested' therein (as hereinafter defined).

"(b) A person or association shall be held to be a person participating or interested in a labor dispute if relief is sought against him or it, and if he or it is engaged in the same industry, craft or occupation in which such dispute occurs or has a direct or indirect interest therein, or is a member, officer or agent of any association composed in whole, or in part, of employers or employes engaged in such industry, trade, craft or occupation.

"(c) The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment or concerning employment relations or any other controversy arising out of the respective interests of employer and employe, regardless of whether or not the disputants stand in the proximate relation of employer and employe, and regardless of whether or not the employes are on strike with the employer."

the fourteenth amendment because it authorized peaceful picketing of Senn, and that under the circumstances, the equal protection clause was not violated, Mr. Justice BRANDEIS very significantly stated (p. 480) : "There is no basis for a suggestion that the union's request that Senn refrain from working with his own hands, or their employment of picketing and publicity, was malicious; or that there was a desire to injure Senn."

In *Lauf et al. v. Shinner & Co.,* 303 U. S. 323, 82 L. ed. 872, 58 Sup. Ct. 578, there was clearly a labor dispute within the Wisconsin statute. *New Negro Alliance et al. v. Sanitary Grocery Co.,* 303 U. S. 552, 82 L. ed. 1012, 58 Sup. Ct. 703, involved an interpretation of the United States Supreme Court of the phrase "labor dispute," as used in the Norris-LaGuardia Act. The court held that a labor dispute, as defined in the thirteenth section of the Norris-LaGuardia Act (29 USCA 113) existed because the terms and conditions of employment were concerned, even though the disputants did not stand in the proximate relation of employer and employee.

Many of the decided cases in the appellate courts, both state and federal, involve disputes between groups of employees and unions or employees and outside unions, and on their facts are not controlling or persuasive here.

Although the definition of "labor dispute," as used in our act, is comprehensive and should be given a broad interpretation, consistent with the purposes of the act as set forth in section 2, it seems manifest that a dispute is not a labor dispute unless the controversy is over "terms or conditions of employment," or "the association or representation of persons in negotiating ......or seeking to arrange terms or conditions of employment......," as defined in paragraph (c) of section 3 of the act. No one would say that a dispute between two employees of the same employer over a right of way, division line of property, or some other private matter would be a labor dispute, because terms

or conditions of employment would not be involved. So, here, there was no controversy concerning the terms or conditions of employment. That matter, so far as the record shows, had been completely settled by the execution of the collective-bargaining agreement on May 23, 1937. This contention grew out of the plaintiffs' endeavoring to get into a union, under an agreement, while the union is trying to keep them out. There was no dispute as to what group should represent the employees for the purpose of collective-bargaining; nor, in view of the defendants' unwarranted refusal to admit plaintiffs into membership, could defendants' action in forcing the employer to discharge the plaintiffs have had for its purpose the employment of none other than members of the defendant association. We can but conclude, therefore, that under the facts before us this was not a "labor dispute" within the provisions of our statute.

The facts found by the chancellor, and affirmed by the court in banc, fully warrant the conclusion that defendants' conduct, with no apparent lawful purpose, constituted a malicious and unlawful interference with plaintiffs' employment.

Concluding, as we do, that the dispute did not come within the Act of 1937, supra, the plaintiffs' rights are not subject to its limitations. We are all of the opinion that the injunction and damages were properly awarded.

Decree of the court below is affirmed, at appellants' costs.