## Comerford-Publix Theatres Corp. v. United Theatrical Alliance of the C. I. O., Local 997, et al.

*Harold A. Scragg* and *Joseph Marzzacco*, for plaintiff.
*Joseph V. Phillips*, for defendants.
LEACH, P. J., September 4, 1940.—

### *Facts*

1. Members of defendant union formed a picket line before three of plaintiff's places of business and carried a sign as follows: "Local 329 Movie Operators Unfair to Local 997 United Theatrical Workers of the C. I. O." The word "unfair" was in large letters and a person who wished to go into plaintiff's theatres would believe that he was breaking a picket line.

2. There is no question that the forming of a picket line is not conducive to the prosperity of the place that is picketed. Even defendants would not suggest that a picket line is helpful in promoting patronage of the place picketed.

3. Plaintiff has a proper contract with the Moving Picture Operators' Local No. 329 of the International Alliance of Theatrical Stage Employes and Moving Picture Machine Operators of the United States and Canada. The said union is a subsidiary unit of the American Federation of Labor.

4. The said contract has been a renewal of former contracts for 20 years, and there is no dispute between plaintiff and its employes and plaintiff is under legal obligation to abide by its contract with the A. F. of L. union.

### Conclusions of law

1. The Act of June 9, 1939, P. L. 302, sec. 1, amending section 4 of the Labor Anti-Injunction Act of June 2, 1937, P. L. 1198, 43 PS §206-d, provides as follows:

"That this act shall not apply in any case

"(a) Involving a labor dispute, as defined herein, which is in disregard, breach, or violation of, or which tends to procure the disregard, breach, or violation of, a valid subsisting labor agreement arrived at between an employer and the representatives designated or selected by the employes for the purpose of collective bargaining, as defined and provided for in the act, approved the first day of June, one thousand nine hundred and thirty-seven.
. . . .

"(b) Where a majority of the employes have not joined a labor organization, or where two or more labor organizations are competing for membership of the employes, and any labor organization or any of its officers, agents, representatives, employes, or members engages in a course of conduct intended or calculated to coerce an employer to compel or require his employes to prefer or become members of or otherwise join any labor organization.

"(c) Where any person, association, employe, labor organization, or any employe, agent, representative, or officer of a labor organization engages in a course of conduct intended or calculated to coerce an employer to com-

mit a violation of the Pennsylvania Labor Relations Act of 1937 or the National Labor Relations Act of 1935."

2. "Labor dispute" has been defined by the Superior Court as follows:

"Although the definition of 'labor dispute,' as used in our act, is comprehensive and should be given a broad interpretation, consistent with the purposes of the act as set forth in section 2, it seems manifest that a dispute is not a labor dispute unless the controversy is over 'terms or conditions of employment,' or 'the association or representation of persons in negotiating . . . or seeking to arrange terms or conditions of employment . . . ,' as defined in paragraph (c) of section 3 of the act. No one would say that a dispute between two employees of the same employer over a right of way, division line of property, or some other private matter would be a labor dispute, because terms or conditions of employment would not be involved": Dorrington et al. v. Manning et al., 135 Pa. Superior Ct. 194, 205.

### Discussion

Members of two labor unions have a dispute between them. The dispute in no wise concerns plaintiff. There is no objection on the part of anyone as to plaintiff's relations with its union employes under a proper union contract. Instead of picketing the organization itself, defendants proceed to picket plaintiff's theatres. This act is calculated to injure plaintiff's business and to make it impossible for plaintiff to continue the valid and subsisting contract that it has with the labor union.

The fact that there is a dispute between labor unions or between other men who labor does not deprive an employer or other person of his right to continue in business without meddling with the dispute. In fact, the various labor acts expressly provide a penalty when they meddle with the right of their employes in collective bargaining. It would be a greater interference with the right of their employes if they could be coerced into interfering

in the dispute over a fence line, an assault and battery case, or other rights which men who labor have in common with every other citizen.

By the express provisions of the amending Act of 1939, supra, the courts of equity are allowed to resume their ancient jurisdiction and protect employers who try to carry out the provisions of their contract with a recognized labor union.

September 4, 1940, the rule to take off the preliminary injunction is discharged. The injunction is to continue pending a final disposition of this case.