Ralston et al., Appellants, *v.* Cunningham et al.

Submitted December 13, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES and HIRT, JJ.

*Thomas J. Mullaney,* of *Hirst & Mullaney,* for appellants.

*Saul C. Waldbaum,* for appellees.

Opinion by Rhodes, J., January 30, 1941:

This is an appeal by plaintiffs from the final decree of the court below dismissing their bill in equity. Plaintiffs were or are employees of Dungan Hood & Co., Inc., and the defendants are the employer, the International Fur and Leather Workers' Union of U. S, & C., Local No. 30, affiliated with the Congress of Industrial Organization, and the officers of the local union. Plaintiffs are also members of the United Leather Workers' International Union, Local No. 64, affiliated with the American Federation of Labor.

The bill in equity brought against defendants on October 30, 1939, requested that defendants be restrained from discharging plaintiffs from their employment with Dungan Hood & Co., Inc., and from requiring plaintiffs to pay dues to the defendant union. Three of the plaintiffs who were discharged from their employment requested an award of damages in their favor against defendants by reason of their discharge. No answer was filed by defendant employer, but joint and several answers were filed by the other defendants. The chancellor heard testimony as upon final hearing, and entered a decree nisi dismissing the bill and denying the relief sought. The court in banc dismissed plaintiffs' exceptions to the findings and conclusions of the chancellor, and made the decree nisi final. Plaintiffs have appealed, and assign as error the dismissal of their exceptions and the final decree.

The facts are not in dispute. As the result of an election held on September 21, 1939, under the supervision of the National Labor Relations Board, it was determined that defendant union (C.I.O.) should act as the bargaining agent for all the employees of the defendant company. Thereafter, on October 11, 1939, an agreement to be operative November 1, 1939, and to be effective for a two-year period, was entered into between defendant union and defendant employer. The pertinent

paragraphs of the agreement are printed in the margin.[1] Both sides agree that this agreement is a valid, legal, and subsisting one.

In 1937, defendant union, as the bargaining agent for all employees, had executed a written contract with the defendant company.

Plaintiffs Mary Dunn, Edna Haas, Helen Cassalia, Gladys Schade, and Abbie Miller filed application cards in 1937, applying for membership in defendant union, and each paid $2, or two months' dues, at the time of making application. The application provided: "I, the undersigned, hereby apply for membership in the Na-

---

[1] "12. Manufacturer agrees that any new worker subject to this agreement, who shall be hired hereafter, shall be required to become a member of the Union within three (3) weeks of the date of hiring. It is agreed by the parties hereto that nothing herein shall be interpreted as requiring employees to join the Union who at the time of the signing of this agreement have not made application for or do not hold due books in the Union. Such employees may apply for membership in the Union of their own volition. Upon making such application, such new employees shall be accepted for membership in the Union, and while in the employ of the Manufacturer, shall be required to pay dues in accordance with paragraph 13 hereof. Union agrees that neither its officers, nor its members, nor persons employed directly or indirectly by the Union, will intimidate or coerce employees; nor will it solicit members or collect dues during working hours.

"13. Manufacturer further agrees that in the event any employee subject to this agreement, who has made application for membership or holds a due book in the Union, does not hereafter pay his weekly Union dues, as the same shall hereafter accrue, for three (3) weeks, the Manufacturer and the employee shall be notified by the Union, by registered mail exclusively, postage prepaid, and if the said employee does not pay his said Union dues within seven (7) days after receipt of said notice by the Manufacturer, said employee shall be laid off and not be permitted to work until he has paid said dues.

"14. Present employees shall be reinstated in the Union, upon payment of the reinstatement fee of no more than Two Dollars ($2.00), provided such employee shall have applied for reinstatement within sixty (60) days from the date hereof."

tional Leather Workers' Association, affiliate of the C.I.O., and authorize its officers to represent me in negotiations with my employer for the purpose of collective bargaining on wages, hours, grievances, and conditions of employment."

These plaintiffs never tendered any formal written resignation to defendant union, nor did they withdraw their applications; and they were informed by defendant employer and defendant union that, because of their applications for membership in defendant union, they, being covered by paragraph 13 of the agreement, would be required within three weeks of the effective date of the contract to pay the current dues to defendant union. Subsequently, they received notice by registered mail from defendant union that unless the dues were paid to it they would be discharged from their employment. Plaintiffs Mary Dunn, Helen Cassalia, and Gladys Schade, not having paid their dues, were discharged from their employment with defendant company, and in the bill filed requested an award of damages in their favor against the defendants resulting from their discharge.

All the plaintiffs are and were at the time of filing their bill in equity members in good standing of the United Leather Workers' International Union, Local No. 64, affiliated with the American Federation of Labor. Plaintiffs Mary Dunn, Edna Haas, Helen Cassalia, Gladys Schade, and Abbie Miller joined local union No. 64 (A. F. of L.) in 1938, paid their dues regularly, took an active part in the affairs of that union, voted for that union as their bargaining agent at the election held on September 21, 1939, under the supervision of the National Labor Relations Board, desired to retain their membership therein, and had no desire to be members of the defendant union. If the three plaintiffs who were discharged paid their dues to defendant union they would have been returned to work with defendant company.

Plaintiffs contend that they were exempt from the provisions of the contract entered into between defendant union and defendant company, and that they were entitled to the relief prayed for in their bill.

The court below has disposed of plaintiffs' contentions in its opinion, and no further discussion is required on our part. We quote the opinion in part as follows:

"This is essentially a contest between two unions. They both agree, in fact they insist, that the agreement of November 1, 1939, is a valid, legal and subsisting one. The manufacturer, who concluded the agreement with the defendant union, has not intervened or taken any part in these proceedings.

"What the unions really want is a construction of the agreement in what amounts to a petition for a declaratory judgment. We believe we might dismiss the bill on the ground that the three employe members of the A. F. of L. union who were discharged have an adequate remedy at law, and that the other [plaintiffs], who have not been discharged, are not entitled to a determination of their rights until they have been injured. ......

"We are of opinion that the Courts have jurisdiction in a case of this kind. We do not regard this controversy as a labor dispute. It is rather a quarrel over the interpretation of the document which settled a labor dispute. ......

"We see no warrant for holding that the legal construction of this contract should be assigned to an administrative board or to arbitration. No course of conduct, no unfair labor practice, no policy of coercion is involved here. The parties simply wish to determine what it is their contract permits them to do and what it prohibits. The testimony reveals that what the defendants did was done by the precise method laid down in the contract, for the three discharged [plaintiffs] were notified by registered mail within the prescribed time limit, and at the hearing it was stated that their jobs

were still available if they paid the dues provided for. The contract is not attacked: the parties merely wish to know what it means, and whether the interpretation on which the defendant union acted was proper in law. We know of no case which compels us to hold that the disputed interpretation of an admittedly legal contract is a 'labor dispute' within the intendment of labor law. Rather do we consider it the proper province of the Courts to interpret a legal document. . . . . . .

"The [plaintiffs] have not been ousted from their jobs without a chance. . . . . . . They could have kept their jobs had they paid [dues], and they can get them back by doing so. They *must* be members of the C.I.O., but they can remain in the A. F. of L. if they wish. . . . . . .

"We do not doubt that the [plaintiffs] who have applied for membership in the C.I.O. are bound by the provisions of paragraph 13, and do not fall within the second and third sentences of paragraph 12; these sentences are obviously parenthetical, for the fourth sentence picks up the thought of the first and refers to new workers hired after the date of the agreement. The second and third sentences refer to workers who were in the manufacturer's employ on the date of the agreement and who had prior to that time not applied for membership in the C.I.O. Paragraph 13 covers *any* employe who has so applied. No time is given within which such application was to have been made, and we see no basis for inventing one. We are impelled against doing so by paragraph 14, which provides for reinstatement in the C.I.O. within sixty days after the agreement, and gives delinquent, or 'unfinancial,' member employes the opportunity to regularize their position. There is testimony that negotiations had been under way in this shop for some time, and that there was another labor contract in force in 1937, when the [plaintiffs] made their applications. In view of this continuing situation, we do not regard the two year period as unreasonable. To

fix six months, or twelve, or eighteen, would be purely arbitrary and would be re-writing a provision of the contract whose express silence on the point must have some significance. The same reasoning applies to [plaintiffs'] contention that the contract covers only those applicants who were in good financial standing when the contract was signed. Had this idea been intended, it could easily have been expressed. ......

"In our view the contract binds the [plaintiffs], regardless of their motive in applying or their lack of interest in the C.I.O., and regardless of whether they completed their membership. This would not follow had they taken any effective steps to resign, but expressions of displeasure or desire not to belong are not tantamount to that, nor is their mere failure to pay dues."

The contentions of defendant union that the acts which plaintiffs seek to have enjoined occurred during a labor dispute, as defined by section 3 of the Labor Anti-Injunction Act of June 2, 1937, P. L. 1198, 43 PS §206c, and that the court was without jurisdiction to issue an injunction as prayed for, because of section 6 of that act, 43 PS §206f, are also fully answered in the opinion of the court below.

In this connection we make reference to *Dorrington et al. v. Manning et al.*, 135 Pa. Superior Ct. 194, 4 A. 2d 886. In that case plaintiffs sought to enjoin a labor union from interfering with the contractual relations with their employer, which had been forced by the union to discharge the plaintiffs under a closed-shop agreement after the union had denied membership to the plaintiffs, without apparent reason, and in violation of an understanding that all employees in the service of the employer at the time of the agreement would so continue and become members of the union. We held that the controversy did not involve terms or conditions of employment within the meaning of the Act of June 2, 1937, P. L. 1198, 43 PS §206a et seq., and said (p. 205) : "Although the definition of 'labor dispute,' as

used in our act, is comprehensive and should be given a broad interpretation, consistent with the purposes of the act as set forth in section 2, it seems manifest that a dispute is not a labor dispute unless the controversy is over 'terms or conditions of employment,' or 'the association or representation of persons in negotiating ...... or seeking to arrange terms or conditions of employment ......,' as defined in paragraph (c) of section 3, of the act. No one would say that a dispute between two employees of the same employer over a right of way, division line of property, or some other private matter would be a labor dispute, because terms or conditions of employment would not be involved. So, here, there was no controversy concerning the terms or conditions of employment. That matter, so far as the record shows, had been completely settled by the execution of the collective-bargaining agreement on May 23, 1937." See, also, *Brown v. Lehman et al.,* 141 Pa. Superior Ct. 467, 15 A. 2d 513; *Eddyside Co. v. Seibel et al.,* 142 Pa. Superior Ct. 174, 15 A. 2d 691.

In the present case there is no question as to which labor union should be the bargaining agent of the employees. There is no dispute as to wages or hours, or as to terms or conditions of employment as such words are used in the statute. The fact that an employer and employee, or a union and an employee, are involved in a case does not prevent the court from assuming jurisdiction. The Act of June 2, 1937, P. L. 1198, as amended by the Act of June 9, 1939, P. L. 302, 43 PS §206a et seq., merely provides, in effect, that, in any case involving or growing out of a labor dispute, the court shall not have the power to issue injunctions to prohibit the particular acts specified in sections 6 and 7 of the act, 43 PS §§206f, 206g. *Main Cleaners & Dyers, Inc., v. Columbia Super Cleaners, Inc., et al.,* 332 Pa. 71, 75, 2 A. 2d 750. The instant case is the result of a

difference of opinion as to the construction of a contract which apparently settled a labor dispute. The controversy involves and grows out of this contract, and in no way involves or grows out of a labor dispute, as contemplated and defined in the Act of June 2, 1937, P. L. 1198, as amended by the Act of June 9, 1939, P. L. 302, 43 PS §206a et seq.

The decree of the court below is affirmed, at the costs of appellants.