379 Pa. 335 (1954)
Bright
v.
Pittsburgh Musical Society, American Federation of Musicians, Local Sixty, Appellant.
Supreme Court of Pennsylvania.
Argued October 4, 1954.
November 8, 1954.
*336 Before STERN, C.J., STEARNE, JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ.
Sylvan Libson, with him Sigmund Rosenwasser, for appellants.
Morris Zimmerman, for appellee.
OPINION BY MR. JUSTICE CHIDSEY, November 8, 1954:
This is an appeal from the order of the Court of Common Pleas of Allegheny County, granting a preliminary *337 injunction against the appellants, Pittsburgh Musical Society, American Federation of Musicians, Local Sixty, and its officers individually, enjoining them from directing or requesting members of appellant union not to play live music for appellee at his public performances, from maintaining appellee's name on appellant union's unfair list and from requesting the American Federation of Musicians (a national union) to place appellee on its unfair list.
Appellee, a resident of New York, is a professional entertainer, who performs a comedy act at night clubs, conventions and similar places. He has been engaged in this activity for twenty years and for the past six years he has appeared professionally in night clubs in Allegheny County. Appellee plays no musical instrument, but performs under a standard form of employment contract (as required by the American Guild of Variety Artists, of which he is a member), which provides that the operator of any night club in which appellee performs is required at his own expense to furnish appellee with live musical accompaniment for rehearsals and for performances. Music is played upon appellee's entrance to start his performance and his exit upon completing it. It is also played from time to time during his performance to add color and enhance audience appreciation of his act.
Appellant union is an unincorporated association of musicians. Its jurisdiction is limited to Allegheny County. The musicians who furnished the music for appellee's act in the past in Allegheny County were all members of appellant union.
At some time prior to November 25, 1953, a dispute arose between appellant union and a group of radio entertainers known as "disc jockeys". A "disc jockey" is a combination announcer and commentator who, among other things, plays recordings of popular music *338 from a radio station for broadcast over the air. Disc jockeys also give news broadcasts, conduct interviews and comment upon the music and artists whose recordings are played over the air. The dispute between appellant union and the disc jockeys, however, concerned none of these activities, but rather a recently developed sideline activity engaged in by some disc jockeys. This sideline activity is known as a "disc hop". A "disc hop" is a dance attended by teen-agers, at which dance the music is furnished by a disc jockey who plays music on a mechanical device. The disc hop is held off the radio premises and is not broadcast over the air. The radio station which employs the disc jockey has no connection with or interest in the disc hop.
On November 25, 1953, appellant union informed owners of places of public entertainment in Allegheny County, booking agents and business representatives of labor organizations representing entertainers that musicians belonging to appellant union would refuse to play live music for any entertainer who permitted himself to be interviewed on any radio program conducted by a disc jockey. Appellee was informed of the policy adopted by appellant union with respect to radio interviews by disc jockeys.
Appellee was engaged to perform his act in a Pittsburgh night club from December 21 to December 24, 1953. On December 19, 1953, he was interviewed by a disc jockey in a program broadcast by radio station KQV in Pittsburgh. The interview lasted about five minutes and consisted solely of questions and answers concerning appellee and his act.
In the afternoon of December 21, 1953, appellee appeared at the night club to rehearse his act. The orchestra leader, on orders of appellant union, refused to participate in the rehearsal and informed appellee that the orchestra would not play music for appellee's act during *339 his performances. The same evening the orchestra furnished music for the two acts preceding appellee's performance, but when appellee was introduced, the members of the orchestra left the stage and no music was furnished for appellee's act. This conduct by the orchestra was repeated until appellee's engagement ended on December 24, 1953.
On December 23, 1953, appellant union placed appellee on its "unfair list" and so informed booking agents, night club operators and the public generally. Appellant union also requested James C. Petrillo, President of the American Federation of Musicians, to place appellee on its national "unfair list", but at the time of the hearing no action had yet been taken by the national union with respect to this request. Appellant union also unsuccessfully attempted to have the Louisville Local of the American Federation of Musicians refuse to play for appellee's performance at a hotel in Louisville, Kentucky. This attempt was unsuccessful as a result of a threat by the hotel owner to discharge musicians from all of his establishments.
Appellants contend that a court of equity has no jurisdiction to enter an order enjoining any of the actions of appellants since this is a matter within the exclusive jurisdiction of the Pennsylvania Labor Relations Board. Appellants argue that the order of the court below prevents the commission of a secondary boycott, which is an unfair labor practice under the Pennsylvania Labor Relations Act, Act of June 1, 1937, P.L. 1168, as amended, 43 PS § 211.1 et seq. Section 8(a) of that Act, 43 PS § 211.8(a), empowers the Labor Relations Board to prevent any unfair labor practice and further provides: "This power shall be exclusive and shall not be affected by any other means of adjustment or prevention that have been or may be established by agreement, law, or otherwise.". Appellants *340 further argue that the jurisdiction of the Labor Relations Board to restrain an unfair labor practice is exclusive whether or not the case involves or grows out of a labor dispute, and that the Labor Anti-Injunction Act of 1937, P.L. 1198, as amended, 43 PS § 206 et seq., prohibits the issuance of an injunction in this case.
On the other hand, appellee contends that the exclusive power of the Labor Relations Board applies only where there is a "labor dispute" as defined by the Act and, in the absence of such a labor dispute, a court of equity may enjoin activities which constitute a continuing interference with appellee's right to contract.
Both parties concede that the actions of appellants in the instant case, if followed as part of a labor dispute, would constitute a secondary boycott under the Labor Relations Act. The issue as thus drawn is two-pronged: (1) Is there a labor dispute, as defined by the Pennsylvania Labor Relations Act and the Anti-Injunction Act, involved in this case, and (2) if not, is the jurisdiction of the Labor Relations Board nevertheless exclusive? We will consider first the question of whether such a labor dispute exists.
Section 3(c) of the Labor Anti-Injunction Act, 43 PS § 206(c), defines "labor dispute" as follows: "The term `labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment or concerning employment relations or any other controversy arising out of the respective interests of employer and employe, regardless of whether or not the disputants stand in the proximate relation of employer and employe, and regardless of whether or not the employes are on strike with the employer.".
*341 Section 3(h), 43 PS § 211.3, of the Labor Relations Act similarly defines "labor dispute" as follows: "The term `labor dispute' includes any controversy concerning  (1) terms, tenure or conditions of employment; or concerning (2) the association or representation of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employe.".
The Labor Anti-Injunction Act further provides in Section 7, 43 PS § 206(g): "No court of this Commonwealth shall have jurisdiction or power in any case involving, or growing out of, a labor dispute to issue a restraining order or temporary or permanent injunction. . .".
Section 3(a) of the Labor Anti-Injunction Act, 43 PS § 206(c), further provides: "A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in a single industry, trade, craft or occupation, or have direct or indirect interests therein . . . or when the case involves any conflicting or competing interests in a `labor dispute'. . .".
A "labor dispute", as defined in both Acts, is a controversy concerning terms or conditions of employment, or representation of persons with respect to terms or conditions of employment: Cf. Alliance Auto Service, Inc. v. Cohen et al., 341 Pa. 283, 19 A. 2d 152.
Appellant union does not represent and has no desire to represent either appellee or disc jockeys. It has no concern with the wages or working conditions of appellee or disc jockeys, whether the employment of the disc jockey is in connection with a radio broadcast or a disc hop. It appears self-evident that an employer must be involved to some extent in any labor dispute, *342 either as one of the parties to a dispute or as one whose employe representation is an issue between competing unions. None of the essential elements of a labor dispute as defined in the Labor Relations Act and the Anti-Injunction Act, are present. Further, the definition of a case arising out of a labor dispute in Section 3(a) of the Anti-Injunction Act must be construed reasonably to apply only where a dispute concerning terms or conditions of employment or representation of employes is an issue in the proceeding. The identity of the persons involved in a controversy is insufficient of itself to oust a court of equity of jurisdiction in a case which was otherwise properly brought before it. It is clear that the Legislature had no intention of establishing an administrative body as a substitute for a court of equity in all matters of dispute between persons who are engaged in the same industry. We, therefore, conclude that this case does not involve or grow out of a "labor dispute" as that term is defined in the Pennsylvania statutes.
This construction of the term "labor dispute" is in accord with the construction of the Superior Court in Dorrington et al. v. Manning et al., 135 Pa. Superior Ct. 194, 205, 4 A. 2d 886, when that court said: ". . . No one would say that a dispute between two employees of the same employer over a right of way, division line of property, or some other private matter would be a labor dispute, because terms or conditions of employment would not be involved. So, here, there was no controversy concerning the terms or conditions of employment. . .". See also to the same effect Ralston et al. v. Cunningham et al., 143 Pa. Superior Ct. 412, 18 A. 2d 108, and Columbia River Packers Association, Inc. v. Hinton et al., 315 U.S. 143.
We now must consider the question of whether, in the absence of a labor dispute, the jurisdiction of the *343 State Labor Relations Board is nevertheless exclusive. The exclusive power given to the Labor Relations Board in Section 8(a) of the Labor Relations Act, supra, to prevent unfair labor practices is not specifically limited to situations where a labor dispute exists. An examination of the Act as a whole, however, makes it clear that such was the intent of the Legislature. This construction of the Labor Relations Act is consistent with the provisions of the Anti-Injunction Act, which is applicable only where a labor dispute exists. Where the Legislature intends to limit powers traditionally exercised by a court of equity, it must clearly express such intention. There is no such clear expression of intention in the Labor Relations Act. We, therefore, hold that the existence of a labor dispute is a condition precedent to any exercise of power by the Labor Relations Board, and that in the absence of a labor dispute the court below had jurisdiction of the instant case.
As a result of the actions of appellants in placing appellee's name on the union unfair list, appellee has been unable to secure employment as an entertainer in Allegheny County. The right to contract for employment is one of the most important of property rights and, therefore, the power of a court of equity may properly be invoked to prevent its impairment: Heasley et al. v. Operative Plasterers & Cement Finishers International Association, Local No. 31, et al., 324 Pa. 257, 188 A. 206; Restatement, Torts, § 766. The wrongful conduct of appellants is continuing in nature and, if there is any remedy at law, it would require a multiplicity of suits to protect appellee's rights. For this additional reason, the court below properly exercised its equitable jurisdiction: Pennsylvania Co., etc., et al. v. Sun Co., 290 Pa. 404, 138 A. 909.
*344 The decree of the court below is affirmed. Costs to be paid by appellants.
Mr. Justice MUSMANNO dissents.